**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
Greenbelt Division**

| | | |
|---|---|---|
| In re: | * | |
| **CJ CAHILL DESIGN BUILD, INC.** | * | **Case No. 22-16226 MCR** |
| | | **(Chapter 7)** |
| Debtor. | * | |

_____

**APPLICATION FOR COMPENSATION AND
REIMBURSEMENT OF EXPENSES OF OFFIT KURMAN, P.A. AS
SPECIAL COUNSEL TO LAURA J. MARGULIES, CHAPTER 7 TRUSTEE**

This Application of Offit Kurman, P.A. (the "Applicant") is for Compensation and Reimbursement of Expenses as Special Counsel to Laura J. Margulies, the Chapter 7 Trustee (the "Application") for the period of December 13, 2022, through the date of filing this Application ("Fee Period").  In support of the Application, the Applicant states as follows:

**<u>Background</u>**

1.      On November 7, 2022, the Debtor filed a Petition under Chapter 7 of the Bankruptcy Code in Case No. 22-16226 MCR ("Bankruptcy Estate" or "Bankruptcy Case" or "Bankruptcy Schedules").  Laura J. Margulies was the duly appointed Chapter 7 Trustee and continues to serve as the Chapter 7 Trustee of the Debtor (the "Trustee").

2.      On November 21, 2022, the Trustee filed an Application to Employ Applicant as Special Counsel to the Trustee to assist in recovering assets of the Debtor for the benefit of creditors of the Bankruptcy Estate.  [DE 15].

3.      On December 12, 2022, the Court entered an Order appointing Applicant as Special Counsel to the Trustee.  [DE 25].

## Application

4.      Applicant submits this Application for its efforts in representing the Trustee.

5.      The services for which compensation is sought and the expenses for which reimbursement is sought herein have not been the subject of a prior fee application.   All professional services for which allowance of compensation is requested were performed by Applicant for and on behalf of the Trustee and the Debtor's Estate and not on behalf of any other person or entity.

6.      Attached hereto as Exhibit A is a detailed breakdown of services rendered to the Estate during the Fee Period that reflect time charges at the hourly rate of the respective attorneys and professional staff of Applicant (collectively the "Statement" or the "Fee Period").   The Statement reflects the date, the description of services on behalf of the Estate and the identity of the professional staff member performing such services.   The rates charged by the Applicant are the rates customarily charged on routine, non-complicated matters, without considering the size of the case and the degree of responsibility, difficulty, complexity and results achieved.

7.      The Bankruptcy Estate received gross receipts totaling Nineteen Thousand Seven Hundred Fifty 00/100 Dollars ($19,750.00) as a result of the Trustee's and Applicant's efforts. The Statement reflects total time charges of Fifty-Eight Thousand Six Hundred Seventy-One and 00/100 Dollars ($58,671.00) with a voluntary discretionary adjustment of $46,671.00 for a total requested amount of Twelve Thousand and 00/100 Dollars ($12,000.00) representing 126.50 hours of time expended by the Applicant in Exhibit A for the Fee Period.

8.      Pursuant to Local Bankruptcy Rule 2016-1, Applicant has prepared this Application in accordance with the Compensation Guidelines for professionals in the United States Bankruptcy Court for the District of Maryland (the "Compensation Guidelines").

2

**Compensation Guidelines Analysis**

9.      With respect to the Compensation Guidelines, Applicant submits the following standards have been complied with, or are being complied with, in this Application.

a)      The Statement attached hereto represents a detailed itemization of the services rendered, time expended, and expenses incurred in the course of providing professional services to the Trustee.  The Statement reflects total time charges for the Fee Period of The Statement reflects total time charges of Fifty-Eight Thousand Six Hundred Seventy-One and 00/100 Dollars ($58,671.00) with a voluntary discretionary adjustment of $46,671.00 for a total requested amount of Twelve Thousand and 00/100 Dollars ($12,000.00) representing 126.50 hours of time expended, by the Applicant in Exhibit A for the Fee Period. Applicant believes that the services rendered were necessary and beneficial to the estate.

b)      Applicant hereby confirms it has reviewed the time and expenses for which compensation is sought in this Application and believes such compensation to be reasonable.

10.      The Compensation Guidelines require categorizing the major tasks performed in the course of representing the Trustee.  The following is a detailed summary description of services rendered, organized by task, and the summary of the time expended for each timekeeper working on such task.  The attached Statement contains a listing of daily time entries that have been edited to reflect the corresponding task numbers provided below.

**Task 001**
**General Administration and Fact Investigation**

This was a complicated case due to the inaccurate information in the Debtor's schedules, the inaccurate testimony of the Debtor's principal and the actions of the Debtor, the Debtor's principal and his related entity, Botanical Decorators, Inc. ("Botanical").  All three (3) of the

3

foregoing were simultaneously in separate bankruptcy proceedings. It appeared that the Debtor and Botanical used some of the same employees, the same vendors and the Debtor's principal was unclear which entity paid for various expenses, owned assets or otherwise could distinguish between the entities.

11.     Prior to the filing of this case, the Debtor was a corporation owned, operated and organized by Christopher John Cahill ("Christopher") and licensed to do business in the State of Maryland, the District of Columbia and the Commonwealth of Virginia.

12.     Prior to the filing of this case, Christopher also owned and operated Botanical, which was also a corporation organized by Christopher and licensed to do business in the State of Maryland, the District of Columbia and the Commonwealth of Virginia.

13.     Both Botanical and the Debtor were in the home remodeling and landscape design business.

14.     Christopher exercised control over Botanical and the Debtor such that some of their obligations and employees were commingled.

15.     On November 7, 2022, Botanical filed a Petition under Chapter 7 of the Bankruptcy Code in Case No. 22-16223 MCR. Laura J. Margulies is the duly appointed Chapter 7 Trustee of Botanical.

16.     On December 2, 2022, Christopher filed a Petition under Chapter 7 of the Bankruptcy Code in Case No. 22-16740 MCR. Laura J. Margulies is the duly appointed Chapter 7 Trustee of the Estate of Christopher.

17.     Applicant attended four (4) § 341 Meetings of the Debtor.

18.     On December 13, 2023, Applicant prepared for and attended the first meeting of creditors which lasted approximately one-half hour long. However, the Trustee did not receive all

4

the required, and requested documentation from the Debtor and the Trustee determined that more time was needed to question the principal of the Debtor, as well as allow sufficient time for creditors to question the Debtor. As such, the Trustee continued the meeting of creditors.

19.     On January 11, 2024, Applicant prepared for and attended a second meeting of creditors which lasted approximately one-half hour long. However, the Trustee still did not receive all the required, and requested documentation from the Debtor and the Trustee determined that additional time was needed to question the principal of the Debtor, as well as allow sufficient time for creditors to question the Debtor. As such, the Trustee continued the meeting of creditors to a specially assigned date and time.

20.     On February 15, 2023, Applicant attending a third meeting of creditors which lasted nearly one (1) hour.

21.     On March 15, 2023, Applicant prepared for and attended a fourth meeting of creditors which lasted nearly two (2) hours long.

22.     Christopher testified at the § 341 Meetings on behalf of the Debtor.

23.     At the § 341 Meeting, Christopher testified that he had claims of embezzlement and fraud against Patrick Ghazarian ("Ghazarian"), a previous employee of the Debtor and Botanical, who acted as an accountant and bookkeeper for both the Debtor and Botanical.

24.     Christopher claimed, among other actions, that Ghazarian signed Christopher's name to various checks from the Debtor's and Botanical's bank accounts without Christopher's authorization and embezzled funds of the Debtor and Botanical for his personal use.

25.     It was necessary for Applicant to investigate these allegations specific to Design Build in order to determine whether these were valid claims that the Estate could pursue and

recover for the benefit of the Debtor's creditors. Part of this investigation included analyzing the relevant documentation.

26.    Ultimately, Applicant determined that the facts and evidence surrounding these allegations against Ghazarian were limited and not worthwhile for the Estate to pursue. Applicant notes that very limited time was expended in researching these allegations.

27.    Applicant performed initial research including reviewing the Debtor's Schedules, Statement of Financial Affairs, tax returns and the Schedules and Statement of Financial Affairs of Botanical, which showed various transactions including assets belonging to the Debtor, Botanical and Christopher, personally, that were sold to employees and subcontractors, loans from Christopher to the Debtor and Botanical, potential preferential transfers and various other questionable financial transactions.

28.    During the course of the investigation of the Debtor's business affairs, Applicant learned that Christopher loaned a significant amount of money to the Debtor and Botanical prior to the filing of these bankruptcy cases. As a result, Applicant determined that the Debtor's Estate may hold a claim against the Christopher's Estate for preferential transfers under 11 U.S.C. §§547 and 548.

29.    Applicant prepared a Proof of Claim on behalf of the Debtor and filed it in Christopher's Bankruptcy Case in the amount of $320,000.

30.    After the second meeting of creditors on January 11, 2023, the Trustee and Applicant did not receive all the required documents from the Debtor prior to the § 341 Meeting pursuant to 11 U.S.C. § 521, including the Debtor's bank statements as well as additional requested documentation regarding the Debtor's business affairs.

31.    In order to complete its due diligence and proper investigation into the Debtor's business financial affairs, Applicant drafted and served a Subpoena to Sandy Spring Bank merely to acquire complete bank records of the Debtor.   Christopher, the Principal of the Debtor, at times could not produce complete records and the Trustee had concerns whether Christopher would produce complete and accurate records on behalf of the Debtor.

32.    Due to the lack of adequate documents produced, as well as additional time required for the Trustee, Special Counsel for the Trustee, the U.S. Trustee and other creditors of the Debtor to thoroughly question Christopher on behalf of the Debtor, the Trustee continued the Meeting of Creditors.

33.    On February 15, 2023, Applicant prepared for and attended the nearly one hour long second continued meeting of creditors, and communicated with the U.S. Trustee's office post-meeting.

34.    Again, due to the lack of the requested and complete documents produced to the Trustee, as well as additional time required for the Trustee, Special Counsel for the Trustee, the U.S. Trustee and other creditors of the Debtor to thoroughly question Christopher on behalf of the Debtor, the Trustee continued the Meeting of Creditors a fourth time.

35.    On March 15, 2023, Applicant prepared for and attended the one hour and forty-eight minutes long (1.80 hours) continued 341 Meeting of Creditors. However, Applicant only charged the Estate 1.40 hours for attending this fourth meeting of creditors, a savings of $214.00.

36.    During these four (4) § 341 Meetings, in which the Trustee, Applicant, the U.S. Trustee's Office and other creditors questioned Christopher, on behalf of the Debtor, Christopher gave conflicting answers to many questions, failed to provide clear and concise answers, and

claimed he failed to recall important facts and information even though the events in question occurred just prior to the filing of the cases.

37.    Upon receiving and reviewing the requested documents from the Debtor and Sandy Spring Bank, which were extremely voluminous, Applicant learned that the Debtor, through Christopher, created a complex and confusing business operation whereby funds from customers of the Debtor and Botanical, as well as payments to the vendors, subcontractors and employees of the Debtor and Botanical were at times commingled amongst the bank accounts for both the Debtor and Botanical, as well as the Christopher's personal bank accounts.

38.    The Debtor, through Christopher, also commingled some assets of the Debtor and Botanical as well as Christopher's personal assets.

39.    Applicant also learned that the books and records for the Debtor were poorly maintained.

40.    Due to the length of the four (4) 341 Meetings, the volume of information and facts discussed, the number of assets and financial transactions involved which were all intertwined with the Debtor, Botanical and Christopher's case, as well as Christopher's confusing and conflicting testimony, Applicant necessitated the transcripts of the 341 Meetings for review and analysis. The transcripts aided Applicant in its review of Christopher's testimony, and ability to cross-reference Christopher's testimony with the actual facts from the Debtor's bank records, tax returns and other documentation which evidenced numerous preference payments, fraudulent pre and post-petition transfers and an intent to hinder and delay the proper administration of the Estates.

41.    After the conclusion of the Meeting of Creditors held on March 15, 2023, the Trustee scheduled a fifth and final Meeting of Creditors to be held on June 14, 2023 in the event

the Debtor failed to produce the requested documents and for additional time for other parties to be able to question the Debtor.

42.     On June 14, 2023, Applicant attended this fifth and final Meeting of Creditors which was brief.

43.     After reviewing and analyzing the Debtor's financial and related business records, documentation of the Debtor's assets, Applicant determined that there were several causes of action against various subcontractors of the Debtor as well as against Christopher and his spouse, Richard Cahill that the Debtor and Botanical could bring.

44.     The Debtor and Botanical owned numerous vehicles and landscape equipment, many of which were either sold to employees or subcontractors, or were traded in exchange for debt owed by the Debtor and Botanical.

45.     Due to the conflicting testimony of Christopher as well as incomplete records produced by Christopher, Applicant prepared a subpoena to the Maryland Motor Vehicle Administration ("MVA") for a complete record of all vehicles titled to the Debtor.

46.     Applicant created an outline of the various causes of actions, including which of the related bankruptcy cases also have the same claim and may be joined as co-plaintiffs.

47.     Applicant created a template complaint to use for each of the adversary cases.

48.     Applicant communicated with the Trustee regarding the release of the Debtor's bank records, the US Trustee's office regarding the documentation produced and other issues.

49.     Robert LaBelle and Michelle LaBelle (the "LaBelles"), creditors and former clients of the Debtor and Botanical, filed a Complaint Objecting to the Granting of a Discharge of Christopher in Adv. Proc Case No. 23-00098.

50.     Applicant and Paul Sweeney, Counsel for the LaBelles, shared related documentation and conducted correspondence regarding the LaBelles claims against Christopher, the Debtor and Botanical, and issues and facts related to Christopher and Debtor and Botanical's preference payments, avoidance actions and Christopher's dischargeability issues.

51.     Applicant also conducted correspondence with Debtor's counsel regarding the turnover of relevant documentation, potential problems with the Debtor's case and rescheduling the meeting of creditors.

52.     The lack of cooperation by Christopher, his failure to turn over complete and accurate records, as well as his conflicting and false testimony at each of the five (5) 341 Meetings caused an unnecessary increase in fees and a significant delay in the administration of the Estate, at the expense of his creditors.

53.     Applicant notes that the majority of fees associated with this task relate to preparing for and attending each of the meetings of creditors, reviewing the Schedules and Statement of Financial Affairs and cross referencing them with that of Botanical's, and investigating the Ghazarian claim.

54.     The time spent by Applicant performing this task is summarized as follows:

| Timekeeper | Rate | Hours | Amount Billed |
|---|---|---|---|
| James M. Hoffman – Attorney | $485.00 | 6.80 | $ 3,298.00 |
| James M. Hoffman – Attorney | $535.00 | 8.60 | $ 4,601.00 |
| Miriam Margulies – Paralegal | $125.00 | 3.30 | $   412.50 |
| Miriam Margulies – Paralegal | $200.00 | 9.40 | $ 1,880.00 |
| **Total Task 001** | | **28.10** | **$10,191.50** |

### Task 002
### General Correspondence with Trustee

55.     Applicant communicated with the Trustee regarding the status of various progressions throughout the case.

10

56.     The time spent by Applicant performing this task is minimal and summarized as follows:

| Timekeeper | Rate | Hours | Amount Billed |
|---|---|---|---|
| James M. Hoffman – Attorney | $535.00 | 0.20 | $97.00 |
| **Total Task 002** | | **0.20** | **$97.00** |

### Task 003
### Complaint Against Aqua Bright Irrigation and Illumination, LLC

58.     The Debtor admitted in its Statement of Financial Affairs that on October 5, 2022, it transferred a 2021 Nissan Van (est. 40,100 miles) to Aqua Bright Irrigation and Illumination, LLC ("Aqua Bright") to settle a $29,000 debt ("Aqua Bright Transfer") owed by the Debtor.

59.     This Aqua Bright Transfer made to or for the benefit of Aqua Bright was made during the ninety (90) days prior to the Petition Date.

60.     Applicant prepared a Complaint against Aqua Bright ("Aqua Bright Complaint") to avoid and recover the Aqua Bright Transfer pursuant to 11 U.S.C. §§ 544, 547, 548 and 550 and to disallow the claim pursuant to 11 U.S.C. § 502(d).

61.     In preparation for the Aqua Bright Complaint, Applicant reviewed and analyzed the transcripts of the 341 Meetings, records from the MVA, and the Debtor's bank records.

62.     On January 19, 2024, Applicant filed the Aqua Bright Complaint in Adv. Proc. Case No. 24-00014 MCR.

63.     Shortly after service of the Complaint, Summons and Notice of Pre-Trial Conference, the Principal of Aqua Bright communicated with Applicant and expressed a desire to resolve their disputes.

64.     The Parties then entered into settlement negotiations which were brief and amicable.

65.    Aqua Bright claimed that the 2021 Nissan Van was less valuable than initially stated as it was in worse condition than Christopher had stated to Aqua Bright at the time of the Aqua Bright Transfer and it required repairs.

66.    The Parties agreed to settle their claims regarding the Aqua Bright Transfer whereby Aqua Bright agreed to pay the Estate the total sum of $19,750.00 in an initial lump sum of $2,000, with the remaining balance payable in certain monthly installments until the balance was paid in full.

67.    Additional terms of the settlement agreement included that in the event of a default Aqua Bright fails to timely cure the default, the balanced owed to the Estate would increase to $24,500, less credit for prior payments, plus attorneys' fees.

68.    In addition, Aqua Bright was to record a lien against the aforementioned vehicle with the MVA. The Estate would hold a lien against the aforementioned vehicle in the amount of $19,750 until the settlement payment was paid in full.

69.    After receiving the final settlement payment, Applicant prepared a lien release letter releasing the lien against the aforementioned vehicle and delivered a copy of said lien release to Aqua Bright.

70.    The time spent by Applicant performing this task is summarized as follows:

| Timekeeper | Rate | Hours | Amount Billed |
|---|---|---|---|
| James M. Hoffman – Attorney | $535.00 | 0.50 | $  267.00 |
| James M. Hoffman – Attorney | $590.00 | 3.90 | $2,301.00 |
| Miriam Margulies - Paralegal | $200.00 | 3.60 | $  720.00 |
| **Total Task 004** | | **8.00** | **$3,288.50** |

**Task 004**
**Complaint Against Dylan French and Equinox Innovative**

71.    Prior to the filing of this case, Dylan French ("French") hired the Debtor to perform work for on his real property located at 5505 16th Street N.W., Washington, DC.

12

72.     Christopher testified at the meeting of creditors that he held a "very close relationship" with French, his friend.

73.     French disputed any friendship with Christopher.

74.     On May 28, 2021, French transferred $47,000 to the Debtor through an entity named "Nobody Media, LLC."

75.     On June 7, 2021, the Debtor transferred $11,881.81 to French.

76.     On March 9, 2023, Christopher, through his bankruptcy counsel, represented in writing to Lynn Kohen, Esq. of the Office of the U.S. Trustee that:

> **Subject:** RE: Botanical Decorators Inc. 22-16223 CJ Cahill Design Build Inc. 22-16226 Christopher Cahill 22-16740 Information Request
> Lynn,
>
> Thanks for the e-mail.
>
> To follow up on these various items, I can report as follows:
> . . .
>
> 6.     Vis a vis the Dylan French transaction, my understanding is that (i) Mr. Cahill was interested in procuring a short term loan; (ii) Mr. French was informed of the purpose of the desired loan and agreed to provide the funds; (iii) Mr. French then loaned $100k to one of the businesses; (iv) the business then immediately disbursed the loaned funds to Mr. Cahill; and (v) Mr. Cahill then paid back Mr. French – directly – one week later.

77.     The Trustee alleged that the above-described transfer by Christopher is supported by the following information:

A.     French owns and/or controls an interest in the following entities: Dog Leg First, LLC ("**Dog Leg**"); and Nobody Media, LLC ("**Nobody Media**").

B.     French also owned an interest, at one time, in Equinox Innovations, LLC.

C.     Christopher requested that French extend a $100,000 personal loan (the "**Loan**") for one (1) week to Christopher for himself and his spouse.

13

D.    Dog Leg, an owner or manager of Nobody Media, caused Nobody Media to commence distribution of $100,000 of French's capital to French.  French directed such capital contribution to Christopher.

E.    Christopher asked French to direct the $100,000 of funds to the Debtor for Christopher's Loan without any known reason.

F.    On July 19, 2021, the Debtor received the $100,000 from Nobody Media at the direction of French and for the benefit of Christopher.

G.    On July 19, 2021, the Debtor caused an in-person transfer of $100,000 to Christopher and his husband's joint bank account.

H.    Christopher did not timely repay the Loan from French.

I.    On or before August 2021, French agreed to lend Equinox $100,000.

J.    On August 3, 2021, French sent instructions to Christopher to wire the repayment of the $100,000 overdue Loan to Equinox.

K.    French understood that upon Equinox receiving a $100,000 wire transfer from the Debtor or Christopher, French would receive credit for a personal loan to Equinox in the amount $100,000.

L.    On August 4, 2021, the Debtor attempted to directly wire $100,000 to French, but the transaction was not completed.

M.    On August 5, 2021, the Debtor wired $100,000 to Equinox pursuant to French's instructions to Christopher.

N.    Equinox received the $100,000 of transferred funds on or about August 5, 2021, and, upon information and belief, Equinox retained the transferred funds in its own accounts pursuant to French's instructions to Equinox and the loan agreement between Equinox and French.

14

O.      Equinox did not contemplate or enter into any contractual relationship with Christopher or the Debtor.

P.      Unbeknownst to the Trustee, French and Equinox were in litigation over a substantially greater sum than $100,000.

78.    The Debtor's Schedule E/F 3.6 states that the Debtor is indebted to French in the amount of $29,365.70.

79.    On February 14, 2023, French filed a claim against Design Build for $688,585.64.

80.    Applicant and Counsel for French conferred for more than a month but were unable to resolve their differences.

81.    With the Trustee's consent, the Applicant prepared a draft Complaint and sent it to French's counsel to perhaps resolve issues without litigation.

82.    Counsel for the parties had meaningful settlement discussions and were waiting on French's approval to resolve the dispute prior to filing the Complaint.

83.    Despite reviewing the Complaint and asking questions, French ultimately did not respond to the attempts at resolution.

84.    On March 15, 2024, Applicant, upon the request of the Trustee, filed a Complaint against French in Adv. Proc. No. 24-00061 to avoid fraudulent transfers, recovery of avoided transfers, among other claims (the "French Complaint").

85.    Applicant also conducted research and prepared a Motion for Summary Judgment and Memorandum in Support of Motion for Summary Judgment to aid in settlement negotiations with French.

86.    In the French Complaint, the Trustee made the following allegations:

a.      The Loan was a conveyance within the meaning of section 15-201(c) of the

Maryland Uniform Fraudulent Conveyance Act.

b.      The Loan was made at a time when the Debtor was engaged in business or transactions for which any property remaining with the Debtor after the Transfer was an unreasonably small capital.

c.      The Debtor made the Transfer to Equinox for the benefit of French within two (2) years of the Petition Date.

d.      The Loan was a transfer made at a time when the Debtor was insolvent, it was rendered insolvent thereby, and/or it engaged in business or a transaction for which any property remaining with the Debtor after the Transfer was an unreasonably small capital.

e.      The Debtor did not receive reasonably equivalent value in exchange for the Transfer, and as such, the Transfer is avoidable pursuant to section 548(a)(1)(B) of the Bankruptcy Code.

f.      French has not paid or surrendered the Loan or the value thereof to the Trustee.

g.      French was the entity for whose benefit the Transfer was made under 11 USC §550.

87.     On April 17, 2024, French filed an answer to the French Complaint in Adv. Proc. No. 05.  In his answer to the French Complaint, French denied that he was the recipient of the $100,000 transfer from the Debtor to Equinox.

86.     French denied having any control or ownership interest in Equinox until February 13, 2023.

87.     On May 16, 2024, Applicant prepared and filed a Motion for Leave to File Amended Complaint.

16

88.     Applicant conducted legal research and prepared an Amended Complaint to add Equinox as a co-defendant and additional counts against Equinox to hold it liable as the initial transferee under 11 USC §550.

89.     On May 16, 2024, Applicant filed an Amended Complaint against French and Equinox.

90.     On July 15, 2024, Equinox filed an Answer to the First Amended Complaint.

91.     On June 3, 2024, French filed an Answer to Trustee's First Amended Complaint.

92.     In its Answer to the Trustee's First Amended Complaint, Equinox admitted that (a) French agreed to lend Equinox $100,000; (b) on August 5, 2021, the Debtor wired $100,000 to Equinox; (c) Equinox received the $100,000 of transferred funds on or about August 5, 2021 and (d) Equinox did not enter into any contractual relationship with Christopher or the Debtor. Equinox denied the Trustee's allegation that the French owns and/or controls an interest in Equinox.

93.     Among its additional defenses, Equinox also stated that the transfer was made for reasonably equivalent value and that the Debtor was a "mere conduit" that facilitated the transfer.

94.     In its Answer to Trustee's First Amended Complaint, Equinox also filed a cross-claim against French to protect itself from liability by a potential judgment against Equinox.

95.     The Parties then exchanged discovery.

96.     Applicant drafted and served Interrogatories, Request for Production of Documents and Request for Admissions to French and Equinox.

97.     Applicant conducted further correspondence with counsel for French and Equinox in attempts to settle the claims. However, French was unwilling to provide any settlement offer and therefore, the Parties were unable to resolve their disputes before trial.

98.     Applicant prepared the Motion for Summary Judgment which included preparing exhibits, drafting and filing the Pretrial Statement, conducting further legal research and preparing oral argument.

99.     On March 11, 2025, Applicant attended the hearing on the Motion for Summary Judgment.

100.    On March 17, 2025, the Court entered an Order Denying Plaintiff's Motion for Summary Judgment on the basis that, taking the facts and circumstances as a whole, and despite the unusual transfers from French, to Nobody to the Debtor to Christopher and his spouse, and then from Christopher and his spouse to the Debtor, and the attempted transfer to French, no transfer to Nobody Media and the transfer to Equinox, and the Debtor's ability to use the $100,000, the transactions would be collapsed and deemed a simple transfer from French to Christopher with the Debtor being a conduit.

101.    While the Adversary Proceeding was not successful,  Applicant efficiently pursued an aggressive position on behalf of the Estate.

102.    The time spent by Applicant performing this task is summarized as follows:

| Timekeeper | Rate | Hours | Amount Billed |
|---|---|---|---|
| James M. Hoffman – Attorney | $535.00 | 6.80 | $ 3,638.00 |
| James M. Hoffman – Attorney | $590.00 | 35.20 | $20,768.00 |
| James M. Hoffman – Attorney | $650.00 | 20.60 | $13,390.00 |
| Miriam Margulies – Paralegal | $200.00 | 10.40 | $ 2,080.00 |
| Niall D McMillan – Attorney | $340.00 | 12.70 | $ 4,318.00 |
| **Total Task 004** | | **85.70** | **$44,194.00** |

## Task 005
## Application for Compensation

103.    This Application for Compensation has been prepared in accordance with the Compensation Guidelines for Professionals in the United States Bankruptcy Court for the District of Maryland.  The Application for Compensation sets forth a detailed statement of: (1) the services

rendered, (2) the time expended, (3) the expenses incurred, (4) the amounts requested, (5) the rates charged for such services, (6) how the services rendered were necessary to the administration of, or beneficial at the time at which the services were rendered toward the completion of the case, (7) information relevant to a determination that the services were performed within a reasonable amount of time commensurate with the complexity, importance and nature of the problem, issue or task addressed, and (8) an affirmation that the compensation requested is reasonable based upon the customary compensation and reimbursement of expenses charged by the applicant and comparably skilled professionals in non-bankruptcy matters.  Additionally, in an effort to reduce costs to the Estate, Applicant utilized attorneys with lower hourly rates and non-attorney staff, such as paralegals when applicable.

104.    The time spent by Applicant performing this task is summarized as follows:

| Timekeeper | Rate | Hours | Amount Billed |
|---|---|---|---|
| Miriam Margulies – Paralegal | $200.00 | 4.50 | $900.00 |
| **Total Task 005[1]** | | **4.50** | **$900.00** |

| CUMULATIVE TIMEKEEPER HOURS AND AMOUNT BILLED | | |
|---|---|---|
| | **Hours** | **Amount Billed** |
| **Total Task 001** | **28.10** | **$10,191.50** |
| **Total Task 002** | **0.20** | **$    97.00** |
| **Total Task 003** | **8.00** | **$   3,28.50** |
| **Total Task 004** | **85.70** | **$44,194.00** |
| **Total Task 005** | **4.50** | **$    900.00** |
| **TOTAL** | **126.50** | **$58,671.00** |

<u>**Lodestar Analysis**</u>

Under the lodestar analysis of twelve (12) factors enumerated in **<u>Johnson v. Georgia Highway Express, Inc.</u>**, 488 F.2d 714 (5th Cir. 1974) and adopted by the Fourth Circuit in **<u>Barber</u>**

---

[1] This amount does not include unbilled time of 3.70 hours, for $740.00 of fees.

**v. Kimbrells, Inc.**, 577 F.2d 216 (4th Cir. 1978) and **Harman v. Levin**, 772 F.2d 1150 (4th Cir. 1985), Applicant submits the following analysis:

      (a)    **Time and Labor Expended**.  Applicant's detailed Statement of services is attached as Exhibit "A."  Applicant has conscientiously reviewed the Statement for duplicative or unnecessary entries and has previously removed or adjusted any such entries.

      (b)    **Skill Required to Properly Perform Legal Services Rendered**.  Because of the nature of the issues discussed above, in order to adequately represent the Trustee during the course of these proceedings, an expertise in the area of bankruptcy law, and federal litigation was required.  Applicant believes that the skill was required in order to properly perform the legal services required by the Trustee and that they possess such skills. James M. Hoffman, has practiced bankruptcy law and commercial litigation for more than thirty years (30) years, has been involved in numerous complex Chapter 11 cases, has served as general counsel to a Chapter 11 Trustee and special counsel to a Chapter 11 Trustee, and regularly serves as general counsel and/or special counsel to Chapter 7 Trustees in this and other jurisdictions.

      (c)    **Counsel's Opportunity Costs in Presenting the Instant Litigation**. Applicant believes the opportunity costs in representing the Trustee was a factor in this case as it will not be paid for all the services it rendered. This case was high risk due to the utter and complete lack of cooperation by the Debtor's principal, significant communication delays, inaccurate and conflicting testimony by the Debtor's principal and a failure to turnover complete records and documentation as requested by the Trustee. This hampered the Trustee's ability to timely administer the Estate, which unnecessarily increased fees and costs, at the expense of the Debtor's creditors.

(d)     **Customary Fees for Like Work**.   The customary fees charged in these matters are normally measured by the time expended and the results obtained.  In representing the Trustee, Applicant charged its usual and customary rate for all similar bankruptcy and non-bankruptcy cases.

(e)     **Applicant's Expectation at the Outset of Litigation**.  As in all litigation, there is no guarantee as to the outcome.

(f)     **Time Limitations**. The issues presented in this case did not impose significant time limitations upon Applicant.

(g)     **Amount in Controversy and Result Obtained**.  The Applicant was engaged as Special Counsel to the Trustee to investigate the Debtor's business operations, undisclosed assets, and fraudulent conveyances, preference payments including pre and post-petition payments and liquidation of the Estate's assets.  Applicant's efforts resulted in the Estate collecting gross receipts totaling Nineteen Thousand Seven Hundred Fifty 00/100 Dollars ($19,750.00) from the Settlement Agreement with Aqua-Bright.

(h)     **Experience, Reputation and Ability of Counsel**.  Applicant submits it is well respected among the bench and bar of this Court and the courts of neighboring jurisdictions. Applicant submits that as a result of its experience in bankruptcy matters, Applicant performed legal services required in representing the Trustee with a high degree of confidence and within an economy of time as compared to the amount of time which would have been required by a lesser experienced Applicant.

(i)     **Undesirability of Case**.  Applicant believes that the representation herein was undesirable for a number of reasons set forth above as the Debtor's principal engaged in profound dilatory tactics by allegedly removing assets of the Estate prior to and after the filing of

this case and the bankruptcy cases of the Debtor Entities, failing to disclose to the Trustee and the Court about such removal of assets, failing to provide information and documentation about such assets, failing to provide the Trustee with the requested and required documentation prior to and after the 341 Meetings, failing to provide complete and accurate responses at each of his 341 Meetings, and failing to timely provide responses to the Trustee and Applicant throughout the entire administration of the Estate, among other actions and omissions. This caused an unnecessary delay in the administration of the Estate at the expense of the Applicant and the other creditors of the Estate. These problems were balanced in part by working with the Chapter 7 Trustee who is knowledgeable, experienced and makes Applicant's representation more efficient through combining our efforts. Frequently, as in this case, it was initially not known whether there would be sufficient assets to pay the Applicant, which makes the case undesirable. This type of case is essentially a contingent fee case with no compensation associated with the high risk taken. The case was further complicated by being administered at the same time as Christopher's case and Botanical's case which appeared to overlap. Applicant will not be paid for most of the services it provided to the Estate.

(j)     **Professional Relationship with Client**.  As stated in the Affidavit of Proposed Attorneys as part of its Retention Application, and as filed with the Court, Applicant has no relationship or connection with the Debtor, its creditors or any other parties in interest, or their respective attorneys in this bankruptcy proceeding or the Chapter 7 Trustee except as disclosed. The Applicant represented the Trustee in this case.

(k)     **Fee Awards in Similar Cases**.  Applicant believes that the compensation sought in this Application is reasonable and consistent with fees awarded in similar cases.

(l)    **Conformity with Compensation Guidelines:**   The undersigned hereby certifies that he is familiar with Local Rule 2016-1 and Appendix "D" thereto, the Compensation Guidelines for Professionals in the United States Bankruptcy Court for the District of Maryland (the "Compensation Guidelines"), and that to the best of his knowledge this Application for Allowance of Fees to Counsel for the Trustee, seeking fees, was submitted in conformity with the Local Rule and the Compensation Guidelines.

WHEREFORE, Applicant prays that it be awarded final compensation and costs as follows:

A.    That compensation be awarded to Offit Kurman, P.A. in the amount of Fifty-Eight Thousand Six Hundred Seventy-One and 00/100 Dollars ($58,671.00) with a voluntary discretionary adjustment of $46,671.00 for a total requested amount of Twelve Thousand and 00/100 Dollars ($12,000.00); and

B.    That this Court authorize the Trustee to immediately pay the sum of Twelve Thousand and 00/100 Dollars ($12,000.00); and

C.    And for such other and further relief as this Honorable Court may deem just and proper under the circumstances.

Date:  April 30, 2025                    Respectfully submitted,

 */s/ James M. Hoffman*
James M. Hoffman, Esquire, Bar No. 04914
Offit Kurman, P.A.
7501 Wisconsin Avenue, Suite 1000W
Bethesda, Maryland 20814
O (240) 507-1700
F (240) 507-1735
jhoffman@offitkurman.com
*Counsel for Laura J. Margulies, Chapter 7 Trustee*

4932-7102-8775, v. 4